## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RODNEY C. BRADLEY,             :
    Plaintiff,                :
                              :
    v.                     :      **CIVIL ACTION NO. 20-CV-1016**
                              :
PHILA. POLICE DEPT,, *et al.*,    :
    Defendants.             :

---

RODNEY C. BRADLEY,             :
    Plaintiff,                :
                              :
    v.                     :      **CIVIL ACTION NO. 20-CV-1017**
                              :
CITY OF PHILADELPHIA, *et al.*,   :
    Defendants.             :

---

RODNEY C. BRADLEY,             :
    Plaintiff,                :
                              :
    v.                     :      **CIVIL ACTION NO. 20-CV-1019**
                              :
PHILA. POLICE DEPT.,          :
    Defendant.              :

---

RODNEY C. BRADLEY,             :
    Plaintiff,                :
                              :
    v.                     :      **CIVIL ACTION NO. 20-CV-1020**
                              :
DIST. COUNCIL #47,          :
    Defendant.              :

**MEMORANDUM**

**BAYLSON, J.**                                                    **MARCH 24, 2020**

      Plaintiff Rodney C. Bradley filed four civil actions on the same day, all of which broadly relate to the same underlying set of events surrounding his termination from employment and his prosecution on criminal charges. Bradley seeks leave to proceed *in forma pauperis* in all four cases. Bradley will be permitted to proceed *in forma pauperis* in each of his cases and his Complaints will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). He will be given leave to amend certain claims as discussed in further detail below.

## I.    FACTUAL ALLEGATIONS

### A.    Civil Action Number 20-1016

      Bradley's first Complaint, docketed as Civil Action Number 20-1016, names as Defendants the Philadelphia Police Department, City of Philadelphia, and "Dist. Council #47 Union." Bradley alleges that in 2016, he was hired as a forensic science tech for the Philadelphia Police Department. At some point during his employment, Bradley "reported the superviesors [sic] & staff for not allowing [him] to do [his] job" and for unspecified racial discrimination and harassment. (ECF No. 2 at 4.)[1] The Complaint indicates that, in 2017, Bradley filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Commission on Human Relations ("PCHR").

      Bradley contends that he was subsequently "accused of false allegations and removed from [his] job." (*Id.*) Bradley also alleges that "I.A. officers" illegally seized his cell phone and

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system. The document referenced in each section of factual allegations refers to the Complaint in that specific case.

that he was arrested and incarcerated "for the past year and counting" without due process.[2] (*Id.* at 4-5.) He also alleges that, on an unspecified occasion, "Lt. McGarry assaulted [him] and threated [sic] [his] life by reaching for his gun while assaulting [him]." (*Id.* at 5.) Bradley clarifies that he did not suffer any permanent injuries and did not seek medical treatment, but he reported the issue to the PCHR. (*Id.*) The Complaint reflects that Bradley was terminated on May 7, 2018 and that he was criminally charged on November 22, 2018.

A search of publicly available dockets reflects that on November 23, 2018, Bradley was arrested in connection with a criminal complaint that charged him with forty-seven counts of intercepting communications in violation of 18 Pa. Cons. Stat. § 5703 and two counts of terroristic threats with the intent to terrorize another in violation of 18 Pa. Cons. Stat. § 2706, all relating to an offense date of December 11, 2017. *See Commonwealth v. Bradley*, MC-51-CR-0029730-2018 (Phila. M.C.). The case has been continued pending a competency evaluation and due to an unspecified program. *Id.* Accordingly, the charges have not yet been resolved. It appears Bradley believes he was charged in retaliation for reporting his employer for race discrimination. (ECF No. 2 at 5.)

In connection with those allegations, Bradley claims numerous violations of his constitutional rights. (*Id.* at 3.) Bradley asks the Court "to investigate [his] case and clear [his] name by looking at [his] proof of [his] innocence" and for damages related to the loss of his job and his incarceration. (*Id.* at 5.)

---

[2] Despite this allegation, it does not appear that Bradley is currently incarcerated. He provided the Court with a street address and a search of the Philadelphia Prison System's inmate locator system reflects he is not incarcerated in a City jail. Although at times he indicates that he is still incarcerated, his Complaint reflects that he is on "strict house arrest." (ECF No. 2 at 11.)

**B.     Civil Action Number 20-1017**

Bradley's second Complaint, docketed as Civil Action Number 20-1017, names as Defendants the City of Philadelphia, Mayor Jim Kenney (misspelled in the Complaint "Mayor Jim Keeney"), "Philadelphia City Council," the Philadelphia District Attorney's Office, and Senator Bob Casey.  Bradley again alleges that he was "unjustly fired" from his job at the Philadelphia Police Department in retaliation for reporting unspecified racial discrimination and harassment.  (ECF No. 2 at 3.)  He also repeats his allegations that he was falsely charged with "fabricated crimes."  (*Id.*)

Bradley alleges that he reported certain of these events at different times to Mayor Kenney's Office, City Council, and Senator Casey's Office.  Although unclear, Bradley appears to be claiming that these officials failed to act in response to being informed of the alleged violation of his constitutional rights.

**C.     Civil Action Number 20-1019**

Bradley's third Complaint, which was docketed as Civil Action Number 20-1019, names the Philadelphia Police Department as the only Defendant.  Bradley alleges that after months of filing reports with the City about the race discrimination he experienced, he was brought to a conference room by his laboratory manager, where other individuals, including two detectives, were waiting.  (ECF No. 2 at 3.)  Bradley alleges that he feared for his safety and requested union representation.  Lt. McGarrey, apparently an officer of the Philadelphia Police Department, "stood up and tried to snatch [Bradley's] cell phone" then gestured "like he was reaching for his gun," which scared Bradley.  (*Id.*)

Bradley alleges that this was an "ambush tactic" to "separate [him] from other witnesses."  (*Id.*)  He claims to have suffered emotionally and mentally by "possibly being killed at [his] job."  (*Id.* at 4.)

4

Bradley contends that his First Amendment rights were violated because police officers visited him five days after he sent an email to Mayor Kenney about the "racism [he] was enduring." (*Id.*) He also alleges that his Fourth Amendment rights were violated by the confiscation of his cellphone "under false allegation & without a signed search warrant." (*Id.*) Bradley notes that he has been on pretrial house arrest, apparently in connection with the charges against him, and that he seeks $100,000 in damages.

### D.    Civil Action Number 20-1020

Bradley's fourth Complaint, which was docketed as Civil Action Number 20-1020, names "Dist. Council #47" as the only Defendant. Bradley alleges that, during an annual union meeting on June 12, 2018, he sought to "show [his] union members the truth" about the "racial discrimination & constant harassment [he] was force[d] to" endure. (ECF No. 2 at 3.) The meeting ended and the floor was opened to questions. Bradley claims it was his turn to ask why his issues had not been addressed but "other union members got in [his] face & attempted to take the microphone from [him]." (*Id.*)

He also alleges that the president of the union called the police. It is not clear whether the police arrived or what happened thereafter, but Bradley alleges in a conclusory fashion that "false allegations of the meeting were fabricated to illegally remove [him] from [his] job."[3] (*Id.*) Bradley contends that he was not physically injured but that he feared for his safety because fifteen to twenty men were "in [his] face aggressively" which was "emotionally stressful." (*Id.* at 4.) He seeks monetary compensation in an unspecified amount.

---

[3] Although it is possible Bradley has his dates wrong, if his dates are correct, the meeting on June 12, 2018 would have happened after he was removed from his job on May 7, 2018, so it is unclear how any of the events at the June meeting could have caused his termination. *See* Civ. A. No. 20-1016 (ECF No. 2 at 5 (stating "5/7/18 removed from my job").)

## II.     STANDARD OF REVIEW

Because Bradley appears to be unable to pay the filing fee in these cases, the Court will grant him leave to proceed *in forma pauperis*.  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaints if they fail to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.*  As Bradley is proceeding *pro se*, the Court construes his allegations liberally.  *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

"[T]he plausibility paradigm announced in *Twombly* applies with equal force to analyzing the adequacy of claims of employment discrimination." *Fowler v. UMPC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (quotations omitted).   Accordingly, courts evaluating the viability of an employment discrimination complaint should "disregard legal conclusions and recitals of the elements of a cause of action, supported by mere conclusory statements" in determining whether a plaintiff has stated a plausible claim. *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010) (quotations omitted).

Moreover, a complaint may be dismissed for failing to comply with Federal Rule of Civil Procedure 8.  *Garrett v. Wexford Health*, 938 F.3d 69, 91 (3d Cir. 2019).  To conform to Rule 8, a pleading must contain a short and plain statement showing that the plaintiff is entitled to relief. *See Traveline v. U.S. Supreme Court*, 424 F. App'x 78, 79 (3d Cir. 2011).  The Third Circuit recently explained that in determining whether a pleading meets Rule 8's "plain" statement requirement, the Court should "ask whether, liberally construed, a pleading 'identifies discrete

defendants and the actions taken by these defendants' in regard to the plaintiff's claims." *Garrett*, 938 F.3d at 93 (citation omitted). A pleading may still satisfy the "plain" statement requirement "even if it is vague, repetitious, or contains extraneous information" and "even if it does not include every name, date, and location of the incidents at issue." *Id.* at 93-94. The important consideration for the Court is whether, "a pro se complaint's language . . . presents cognizable legal claims to which a defendant can respond on the merits." *Id.* at 94.

However, "a pleading that is so 'vague or ambiguous' that a defendant cannot reasonably be expected to respond to it will not satisfy Rule 8." *Id.* at 93; *see also Fabian v. St. Mary's Med. Ctr.*, Civ. A. No. 16-4741, 2017 WL 3494219, at *3 (E.D. Pa. Aug. 11, 2017) ("Federal Rule of Civil Procedure 8 requires that pleadings provide enough information to put a defendant on sufficient notice to prepare their defense and also ensure that the Court is sufficiently informed to determine the issue.") (quotations omitted). Dismissals under Rule 8 are "'reserved for those cases in which the complaint so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.'" *Garrett*, 938 F.3d at 94 (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)).

## III. DISCUSSION

### A. Civil Action Number 20-1016

The Court understands Bradley's Complaint in Civil Action Number 20-1016 to arise from two underlying, apparently related, sets of events: (1) matters related to his conditions of employment and his ultimate termination from employment; and (2) matters related to his arrest, prosecution, and the police investigation that led to the criminal charges being filed against him.

Bradley's Complaint could be construed to be raising these claims pursuant to Title VII and/or 42 U.S.C. § 1983.[4]

### 1. Title VII Claims

Although unclear, it is possible Bradley intends to bring claims under Title VII for employment discrimination and harassment based on race, as well as retaliation. *See* 42 U.S.C. § 2000e-2(a). To state a plausible claim under Title VII, a plaintiff must allege sufficient facts to raise a reasonable expectation that his membership in a protected class was "either a motivating or determinative factor in [his employer's] adverse employment action against [him]." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (2016) (internal quotations omitted). For a plaintiff to establish that he was subjected to a hostile work environment in violation of Title VII, he "must show that (1) he suffered intentional discrimination because of his [membership in a protected class]; (2) the discrimination was pervasive and regular; (3) it detrimentally affected him; (4) it would have detrimentally affected a reasonable person of the same protected class in his position; and (5) there is a basis for vicarious liability." *Cardenas v. Massey*, 269 F.3d 251, 260 (3d Cir. 2001).

Title VII also prohibits an employer from retaliating against an employee for opposing any act made unlawful by the employment discrimination statutes, or because he made a charge, testified, assisted, or participated in an investigation, proceeding, or hearing under the employment discrimination statutes. *See* 42 U.S.C. § 2000e-3. A plaintiff states a retaliation

---

[4] As noted above, the Complaint in Civil Action Number 20-1016 names as Defendants the Philadelphia Police Department, the City of Philadelphia and "Dist. Council #47 Union." As the union is mentioned only in the caption, and as there are no allegations against the union in the body of the Complaint, the Court will dismiss Bradley's claims against the union for failure to state a claim. Civil Action Number 20-1020 is the only case in which Bradley raises factual allegations in the union context, and these allegations will be addressed below.

claim if he "pleads sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence of the following elements: (1) [he] engaged in conduct protected by Title VII; (2) the employer took adverse action against [him]; and (3) a causal link exists between [his] protected conduct and the employer's adverse action." *Connelly*, 809 F.3d at 789.

Bradley's Complaint is pled is general and conclusory terms. He alleges that he reported his employer for race discrimination and harassment, but he does not elaborate on those allegations or describe his work environment with any specificity. Indeed, Bradley does not even identify the protected class to which he belongs. Accordingly, because these claims are premised solely on conclusory allegations, they are not plausible as pled, and must be dismissed. *See, e.g.*, *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012) ("Plaintiff's general assertions of discrimination and retaliation, without any details whatsoever of events leading up to her termination, are insufficient to survive a motion to dismiss."); *Shahin v. Del. Dep't of Transp.*, 405 F. App'x 587, 588-89 (3d Cir. 2010) (per curiam) (affirming dismissal of complaint where plaintiff failed to provide "details on what position she applied for, how she was qualified for the position, and what protected classes she belongs to"); *Golod v. Bank of Am. Corp.*, 403 F. App'x 699, 702 (3d Cir. 2010) (affirming dismissal of complaint for failure to state a claim when plaintiff "offered no factual allegations to bolster her legal conclusions"). However, the Court will give Bradley an opportunity to file an amended complaint in the event he can state a plausible claim.

Additionally, prior to filing a lawsuit under Title VII, a plaintiff must file a charge of discrimination with the EEOC and receive a right to sue letter before filing a complaint in federal court. *See* 42 U.S.C. § 2000e-5(e), (f)(1); *Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843, 1846 (2019). A plaintiff filing a civil action under Title VII must file suit within ninety days of receiving a right-to-sue letter from the EEOC. *See* 42 U.S.C. § 2000e-5(f)(1). These

requirements are prerequisites to filing a lawsuit under Title VII, but they are not jurisdictional. *Davis*, 139 S. Ct. at 1846. Although the Court has dismissed Bradley's Title VII claims on the basis that they are not plausibly pled, it is also worth noting that it is not clear from the Complaint whether he has fully exhausted administrative remedies. If Bradley has not yet completed that administrative process, he may seek to do so prior to pursing any Title VII claims in federal court.

### 2. Section 1983 Claims

Bradley primarily characterizes his claims as constitutional violations that he is pursuing under § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). The Philadelphia Police Department is not a separate entity from the City and is not a person subject to suit under § 1983, so Bradley's claims against it will be dismissed with prejudice. *See* 53 Pa. Cons. Stat. Ann. § 16257; *see also Bush v. City of Philadelphia Police Dep't*, 684 F. Supp. 2d 634, 636 (E.D. Pa. 2010) (dismissing the Philadelphia Police Department as a matter of law because it is not a legal entity separate from the City of Philadelphia); *Gremo v. Karlin*, 363 F. Supp. 2d 771, 780-81 (E.D. Pa. 2005) (dismissing City of Philadelphia Police Department and the City of Philadelphia Police Department Northeast Detective Division). The Court will construe Bradley's claims against the Philadelphia Police Department as having been raised against the City of Philadelphia, which is also a named Defendant.

Bradley may be pursuing claims under § 1983 based on the discrimination, harassment, and retaliation he allegedly suffered in connection with his employment. When a public employee sues a government employer under the First Amendment, "the employee must show that he or she spoke as a citizen on a matter of public concern." *Borough of Duryea, Pa. v.*

*Guarnieri*, 564 U.S. 379, 386 & 399 (2011) (adopting the same test for claims brought under the First Amendment's speech clause and petition clause); *Bradley v. W. Chester Univ. of Pennsylvania State Sys. of Higher Educ.*, 880 F.3d 643, 650–51 (3d Cir. 2018) (explaining that "[s]peech by government employees is constitutionally protected when the employee is speaking as a citizen, not as an employee, and when the speech involve[s] a matter of public concern" and adding that, "[i]f these two prerequisites are not met, a public employee has no First Amendment cause of action based on his or her employer's reaction to the speech" (internal quotations omitted)). "The right of a public employee under the Petition Clause is a right to participate as a citizen, through petitioning activity, in the democratic process. It is not a right to transform everyday employment disputes into matters for constitutional litigation in the federal courts." *Guarnieri*, 564 U.S. at 399. Accordingly, a plaintiff in such a case must "do more than allege retaliation arising out of the unusual circumstances of his individual employment dispute." *Morgan v. Covington Twp.*, 563 F. App'x 896, 901 (3d Cir. 2014) (citing *Feldman v. Phila. Housing Auth.*, 43 F.3d 823, 829 (3d Cir. 1994)).

Bradley has failed to allege a First Amendment violation because, as noted above, his claims rest on vague and conclusory allegations. He appears to be claiming retaliation based on his complaints and reports of race discrimination and harassment, but his allegations are too generalized and unclear for the Court to conclude that his claim is plausible. Indeed, it is not clear whether Bradley was alleging race discrimination directed at himself or others, the nature of the underlying conduct he complained about, and what action allegedly prompted the retaliatory response. Without additional facts, Bradley has not plausibly alleged that he was retaliated against for speaking or petitioning about a matter of public concern. *See, e.g.*, *Lear v. Zanic*, 524 F. App'x 797, 801 (3d Cir. 2013) (affirming dismissal of police officer's retaliation claim based on investigation and criminal charges). Similarly, Bradley's allegations of racial

discrimination and harassment are far too conclusory to state an equal protection claim. *See, e.g.*, *Lande v. City of Bethlehem*, 457 F. App'x 188, 192 (3d Cir. 2012) ("To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against him because of his membership in a protected class." (quoting *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.,* 587 F.3d 176, 196 (3d Cir. 2009)).

Additionally, to state a basis for municipal liability under § 1983 against the City of Philadelphia, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978). In this context, the City would not be liable unless "an unconstitutional policy could be inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988); *see also Pembaur v. City of Cincinnati,* 475 U.S. 469 (1986). "[I]f a municipal employee's decision is subject to review, even discretionary review, it is not final and that employee is therefore not a policymaker for purposes of imposing municipal liability under § 1983." *Brennan v. Norton*, 350 F.3d 399, 428 (3d Cir. 2003). Here, the Complaint does not indicate who terminated Bradley, who made other relevant decisions regarding his employment, and whether that person or persons were policymakers. This is another reason Bradley has failed to state a claim against the City. *See Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 761 (3d Cir. 2019) (agreeing that school board was entitled to summary judgment when there was "no evidence that those who do qualify as policymakers, such as Booth or the school board, knew about, much less approved, Baloga's transfer for an allegedly unconstitutional reason or delegated [to a subordinate] final policymaking authority, as needed to impute liability to the municipality").

Although Bradley discusses his arrest and prosecution through the lens of his employment, he may also be raising claims that separately challenge those proceedings and the

investigation leading to the initiation of those proceedings. For instance, his Complaint could be understood to be raising Fourth Amendment claims for false arrest, false imprisonment, and malicious prosecution, as well as Fourth Amendment claims for an illegal search and excessive force.[5] *See Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 919 (2017) ("If the complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment."); *Graham v. Connor*, 490 U.S. 386, 395 (1989) (holding "that *all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach"). In that regard, Bradley claims that his cell phone was "illegally taken," that he was falsely arrested, incarcerated and "charged with fabricated allegations," and that an officer "assaulted" him and threatened him. (ECF No. 2 at 4-5.)

To state a claim for false arrest and related false imprisonment under the Fourth Amendment, a plaintiff must allege facts establishing that he was arrested without probable cause. *See Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995). "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Id.* at 483. A plaintiff asserting a malicious prosecution claim must establish that "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the

---

[5] The other constitutional amendments Bradley invokes appear completely inapplicable here and will not be discussed further because Bradley has not alleged any basis for a claim under those amendments.

plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *See McKenna v. City of Philadelphia*, 582 F.3d 447, 461 (3d Cir. 2009). To state an excessive force claim, a plaintiff must allege that the defendant's use of force was unreasonable to state such a claim, *see Estate of Smith v. Marasco*, 430 F.3d 140, 148 (3d Cir. 2005), although "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (internal quotations and citation omitted).

Furthermore, as noted above, to state a basis for municipal liability against the City of Philadelphia, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights. *See Monell*, 436 U.S. at 694. "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).

A plaintiff illustrates that a custom was the proximate cause of his injuries by demonstrating that the Defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to his injury." *Id.* (internal quotations and alterations omitted). Further, a plaintiff seeking to state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those

affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019). "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.*

Finally, under the abstention doctrine of *Younger v. Harris*, 401 U.S. 37 (1971), the Court must abstain from adjudicating challenges to certain state criminal proceedings. Absent extraordinary circumstances not present here, *Younger* abstention applies when: "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise the federal claims." *Lazaridis v. Wehmer*, 591 F.3d 666, 671 (3d Cir. 2010) (quoting *Addiction Specialists, Inc. v. Twp. of Hampton*, 411 F.3d 399, 408 (3d Cir. 2005)). *Younger* abstention is "premised on the notion of comity, a principle of deference and 'proper respect' for state governmental functions in our federal system." *Evans v. C.C.P., Delaware Cty, Pa.*, 959 F.2d 1227, 1234 (3d Cir. 1992). Indeed, the Supreme Court has recognized that "[i]f a plaintiff files a false-arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended." *Wallace v. Kato*, 549 U.S. 384, 393-94 (2007).

Bradley's Complaint fails to state a plausible claim against the City based on the criminal charges initiated against him and related investigation for several reasons. First, he has not alleged facts establishing that he was falsely arrested, maliciously prosecuted, or subjected to excessive force, because he couches his claims in legal conclusions rather than alleging facts that describe what happened, when the relevant events occurred, and how matters unfolded. Second, he cannot allege a plausible malicious prosecution claim because the proceedings in question

15

have not yet terminated in his favor.  Third, Bradley has not alleged any plausible basis for holding the City liable because he has not identified a municipal policy or custom that caused the alleged constitutional violations.  Finally, this Court may not interfere with state criminal proceedings, so to the extent he is requesting that this Court establish his innocence and clear his name, Bradley is seeking relief that the Court cannot provide.

   In sum, Bradley has not stated a plausible basis for a § 1983 claim.  He will, however, be given leave to file an amended complaint in the event he can state a plausible claim against an appropriate defendant or defendants.

### B.      Civil Action Number 20-1017

The Court understands Bradley's Complaint in 20-1017 to be raising claims pursuant to § 1983 against the City of Philadelphia, Mayor Kenney, City Council, and Senator Bob Casey, and the Philadelphia District Attorney's Office.

Initially, the Philadelphia District Attorney's Office is subject to dismissal with prejudice because district attorney's offices in Pennsylvania are not entities subject to suit under § 1983. *See Reitz v. Cty. of Bucks*, 125 F.3d 139, 148 (3d Cir. 1997) (holding that "the Bucks County District Attorney's Office is not an entity for purposes of § 1983 liability").  In any event, Bradley has not alleged a policy or custom that would support a basis for municipal liability here, which is fatal to his claim against all the named municipal entities.

As to the individual Defendants, Mayor Kenney and Senator Casey, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  Indeed, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  There are "two general ways in which a supervisor-defendant may be liable for

unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 135 S. Ct. 2042 (2015). First, a supervisor may be liable if he or she "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.*

It is not clear whether Bradley is alleging that Mayor Kenney and Senator Casey failed to act after he emailed them or otherwise notified them about the discrimination at his job, or that they played some role in directing the prosecution against him.[6]  Because the Complaint is so unclear, it fails to comply with Rule 8 or state a plausible claim because it does not provide either the Court or the Defendants with sufficient information to evaluate Bradley's claims and determine the issue.  Additionally, if Bradley's claims are predicated on the fact that these Defendants failed to intervene in his employment situation despite the fact that he emailed them, he has failed to state a plausible basis for liability.  *See Iwanicki v. Pennsylvania Dep't of Corr.*, 582 F. App'x 75, 79 (3d Cir. 2014) (per curiam) ("[M]ere notification of a grievance does not allege sufficient personal involvement because it does not establish that the Defendants personally directed or acquiesced in the retaliation."); *Burk v. Budd*, Civ. A. No. 18-4702, 2019

_____

[6] It must also be noted that Title VII does not provide a theory of liability against individual Defendants based on any race discrimination or harassment Bradley may have experienced during his employment.  *See Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1078 (3d Cir. 1996) ("Congress did not intend to hold individual employees liable under Title VII.").

WL 3765621, at *4 (E.D. Pa. Aug. 19, 2019) (dismissing claims against defendant where "[t]he only fact Burk alleges regarding [the defendant's] personal involvement is that Burk sent letters to [the defendant], but never heard back from him").

In sum, Bradley has failed to allege a plausible basis for a claim against the named Defendants in Civil Action Number 20-1017. Additionally, it appears that this case arises out of the same subject matter underlying Civil Action Number 20-1016. A plaintiff has "no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant," and it is within a district court's power to dismiss or stay a duplicative lawsuit. *Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977) (en banc). The dismissal of Civil Action Number 20-1017 will therefore be without prejudice to Bradley filing a consolidated amended complaint in Civil Number 20-1016 so that he is not proceeding in duplicative lawsuits involving the same subject matter. The Clerk of Court will be directed to close Civil Action Number 20-1017.

### C. Civil Action Number 20-1019

In Civil Action Number 20-1019, Bradley named the Philadelphia Police Department as the only Defendant and raises claims based on his interactions with a detective on May 1, 2018. It appears Bradley is attempting to raise constitutional claims pursuant to § 1983 based on the detective's behavior during that incident, *i.e.*, the detective allegedly took Bradley's phone from him "under false allegation & without a signed search warrant" and threatened him. (Civ. A. No. 20-1019, ECF No. 2 at 4.)

As noted above, the Philadelphia Police Department is not a person subject to suit under § 1983. In any event, Bradley has not alleged a basis for municipal liability here because he has not alleged a that a municipal policy or custom caused the constitutional violations at issue in

this Complaint.  Accordingly, the Court will dismiss Civil Action Number 20-1019 for failure to state a plausible claim.

Furthermore, although the allegations in Civil Action Number 20-1019 are not identical to those in Civil Action Number 20-1016, they clearly address some of the same subject matter. Again, a plaintiff has "no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant," and it is within a district court's power to dismiss or stay a duplicative lawsuit.  *Walton*, 563 F.2d at 70.  The dismissal of Civil Action Number 20-1019 will therefore be without prejudice to Bradley filing a consolidated amended complaint in Civil Number 20-1016 so that he is not proceeding in duplicative lawsuits involving the same subject matter.  The Clerk of Court will be directed to close Civil Action Number 20-1019.

### D.  Civil Action Number 20-1020

In Civil Action Number 20-1020, Bradley brings claims against "Dist. Council #47," a union to which he appears to have belonged.  The basis for Bradley's claims against this Defendant is that at a meeting in June of 2018, somewhere between fifteen and twenty union members prevented him from speaking when the floor was opened to questions and that the president of the union ultimately called the police.  *See* Civ. A. No. 20-1020 (ECF No. 2.)

As Bradley alleges that the union violated his constitutional rights, the Court presumes that he intended to bring his claims pursuant to § 1983.  However, as noted above, a plaintiff in a § 1983 action must allege that "the alleged deprivation was committed by a person acting under color of state law."  *West*, 487 U.S.at 48.  Bradley has not alleged any facts from which the Court could plausibly conclude that the union is a state actor, so he has failed to state a claim against the union under § 1983.  *See Jackson v. Temple Univ. of Com. Sys. of Higher Educ.*, 721 F.2d 931, 933 (3d Cir. 1983) (agreeing with conclusion that the union's action could not be fairly

attributed to the state when the plaintiff failed "to set forth any facts suggesting that the state was responsible for the Union or that the Union was acting under color of state law in deciding not to bring Mr. Jackson's grievance to arbitration"); *see also Johnson v. Int'l Bhd. of Teamsters (Local 830)*, 256 F. App'x 481, 483 (3d Cir. 2007) (per curiam) (explaining that the ultimate issue for purposes of union's liability under § 1983 was whether "the alleged infringement of federal rights is fairly attributable to the state" (internal quotations omitted)); *White v. Commc'ns Workers of Am., AFL-CIO, Local 1300*, 370 F.3d 346, 350 (3d Cir. 2004) (discussing state action in the union context).

Bradley's Complaint could also be construed as raising claims pursuant to the Labor-Management Reporting and Disclosure Act, which states in relevant part:

> Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided,* That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

29 U.S.C.A. § 411(a)(2). To state a claim under this provision, "[t]he subject matter of any protected speech must directly relate to the union-member relationship." *Kovach v. Turner Dairy Farms, Inc.*, 929 F. Supp. 2d 477, 490 (W.D. Pa. 2013) (internal quotations omitted). However, "it certainly was never the intention of Congress to open the federal courts to the adjudication of ordinary tort claims [under the LMRDA] merely because the conduct occurs in a union hall during a union meeting and none, one, or all of the participants are union members." *Tomko v. Hilbert*, 288 F.2d 625, 629 (3d Cir. 1961).

As with Bradley's other claims, this claim fails because it is pled in a generalized, conclusory fashion. He broadly suggests that he wanted to discuss unspecified racial issues at

the union meeting without clarifying what those issues were, and contends that several union members surrounded him. It is unclear from the Complaint whether that conduct could be attributable to the union itself. Although Bradley indicates that the union president called the police, he does not explain why the police were called, what happened thereafter, and how that relates to the events of the other union members. Accordingly, as pled, the Complaint fails to state a plausible claim. *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotations omitted)).

As it is possible that Bradley could amend his claims against the union with additional factual allegations, he will be given leave to file an amended complaint. The allegations in this Complaint are somewhat distinct from Bradley's other claims, but since it appears that they all arise from the same general underlying set of events, Bradley should amend his claims against the union in Civil Action Number 20-1016 if he chooses to file an amended complaint. The Clerk of Court will be directed to close Civil Action Number 20-1020.

## IV. CONCLUSION

For the reasons stated, the Court will grant Bradley leave to proceed *in forma pauperis* in the above four cases and dismiss his four Complaints for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Bradley's claims against the Philadelphia Police Department and Philadelphia District Attorney's Office will be dismissed with prejudice, but his remaining claims will be dismissed without prejudice to amendment. Bradley may file an amended complaint as to his claims that were dismissed without prejudice in Civil Action Number 20-1016, so that his claims arising from the same subject matter are asserted in one pleading and may be addressed in one lawsuit. The Clerk of Court will be instructed to close Civil Action Numbers 20-1017, 20-1019, and 20-1020, and Bradley should not file amended complaints in

those cases.  Bradley's letter requests for counsel will be denied without prejudice at this time because he has not yet alleged a plausible claim.  *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993).  An appropriate Order follows, which provides additional instruction as to amendment.

**BY THE COURT:**

**s/ Michael M. Baylson**

_____

**MICHAEL M. BAYLSON, J.**